IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| CEDRIC DERRELL DAVENPORT, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 120-184 |
| | ) | (Formerly CR 107-128 & CR 119-003) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

_____

Petitioner, an inmate at Bennettsville Federal Correctional Institution in Bennettsville, South Carolina, filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** the amended § 2255 motion challenging Petitioner's conviction in CR 119-003 be **DENIED** without an evidentiary hearing, (doc. no. 3), the original motion be **DENIED AS MOOT**, (doc. no. 1), the § 2255 motions in CR 107-128 be **DENIED AS MOOT**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

## I.    BACKGROUND

### A.    Procedural History

On December 29, 2020, the Court ordered Petitioner to refile his motion and specify which conviction he was challenging because it appeared Petitioner was challenging convictions in two separate criminal cases. (Doc. no. 2.) The Court explained Petitioner cannot challenge both convictions in one § 2255 motion. (Id.) Petitioner refiled his motion

challenging only his conviction in CR 119-003.  (Doc. no. 3.)  Thus, Petitioner's § 2255 motions in CR 107-128 should be **DENIED AS MOOT**.  The Court will address the claims raised in Petitioner's amended motion challenging his conviction in CR 119-003.  Because Petitioner's operative motion to vacate is the amended motion challenging his conviction in CR 119-003, the original motion should be **DENIED AS MOOT**.  (Doc. no. 1.)

### B.    Indictment

On January 8, 2019, the grand jury in the Southern District of Georgia indicted Petitioner on one count of felon in possession of firearm in violation of 18 U.S.C. § 922(g)(1).  United States v. Davenport, CR 119-003, doc. no. 1 (S.D. Ga. January 8, 2019) (hereinafter "CR 119-003").  On January 23, 2019, Petitioner pled not guilty.  Id., doc. no. 10.  Petitioner faced a statutory sentence of not more than ten years of imprisonment.  Id., doc. no. 2.  The Court appointed Richard T. Pacheco, II to represent Petitioner.  Id., doc. no. 6.

### C.    Guilty Plea

On February 14, 2019, Petitioner appeared with counsel and entered a guilty plea to the firearm charge.  Id., doc. nos. 18-20.  The written plea agreement identified the elements of the offense as:  "(1) that Defendant knowingly possessed a firearm in or affecting commerce; and (2) that, before possessing the firearm, Defendant had been convicted of a felony, that is, a crime punishable by imprisonment for more than one year."  Id., doc. no. 20, ("Plea Agreement"), p. 1.  In exchange for the guilty plea, the government agreed to (1) not object to a recommendation for a two-point acceptance of responsibility reduction and move for an additional one-point reduction under the Sentencing Guidelines if Petitioner's offense level was sixteen or greater prior to the acceptance of responsibility reduction; (2)

recommend to the U.S. Probation Office and the Court, for purposes of Section 2K2.1(b)(1) of the Sentencing Guidelines, Petitioner's offense involved one firearm; and (3) consider filing a motion, based on any "substantial assistance" provided by Petitioner, for downward departure under U.S.S.G. § 5K1.1 or requesting a reduction of Petitioner's sentence under Fed. R. Crim. P. 35. Id. at 3-5.

The Plea Agreement contained the following factual basis for Petitioner's guilty plea:

On or about July 16, 2018, in Richmond County, within the Southern District of Georgia, the defendant,

**CEDRIC DERRELL DAVENPORT**

having been convicted of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess, in and affecting commerce, a firearm, to wit, a Springfield Armory XDM-9, 9mm handgun, which had been transported in interstate commerce.

Id. at 1-2.  With his signature on the Plea Agreement, Petitioner "stipulate[d] that the factual basis set out therein is true and accurate in every respect." Id. at 12.

By signing the Plea Agreement, Petitioner also "entirely waive[d] his right to a direct appeal of his conviction and sentence on any ground" unless the Court (1) sentenced him above the statutory maximum, (2) sentenced him above the advisory Sentencing Guidelines range, or (3) the government appealed the sentence. Id. at 8.  Absent one of those three conditions, "[Petitioner] explicitly and irrevocably instruct[ed] his attorney not to file an appeal." Id. at 9.  Further, Petitioner waived his right to collaterally attack his conviction and sentence on any ground other than ineffective assistance of counsel. Id.  By signing the Plea Agreement, Petitioner additionally attested Mr. Pacheco had "represented him faithfully, skillfully, and diligently, and [Petitioner] is completely satisfied with the legal advice given and the work performed by his attorney." Id. at 10.

3

At the guilty plea hearing, United States District Judge Dudley H. Bowen, Jr. confirmed no one had threatened or pressured Petitioner into pleading guilty and that he clearly understood where he was and why he was in court. Id., doc. no. 38 ("Rule 11 Tr."), pp. 4, 8, 13. Judge Bowen also reviewed the charge to which Petitioner was pleading guilty and confirmed Petitioner had as much time as he needed to go over the charge with Mr. Pacheco. Id. at 8-9. Petitioner also testified under oath he was satisfied with the assistance he had received from Mr. Pacheco. Id. at 9.

Judge Bowen also explained the rights Petitioner would be waiving by pleading guilty, and Petitioner affirmed he clearly understood those rights. Id. at 10-11. Among the rights explained, Judge Bowen reviewed the right to trial by jury, the presumption of innocence, the government's burden to prove guilt beyond a reasonable doubt, the right to present and cross-examine witnesses, and the right to remain silent. Id. After Petitioner questioned the Court as to the government's burden of proof, Judge Bowen further explained the elements of the offense the government would have to prove if Petitioner went to trial. Id. at 12-13. Judge Bowen also specifically reviewed the appeal and collateral attack waiver provisions of the Plea Agreement. Id. at 19-20. Judge Bowen confirmed that other than the Plea Agreement, no one on behalf of the government had promised anything to procure the guilty plea. Id. at 13, 20.

Judge Bowen reviewed the statutory maximum penalty of ten years in prison. Id. at 9-10. When asked, Petitioner confirmed that he understood the possible imprisonment penalty, as well as the potential $250,000 fine and up to three years of supervised release after completion of the term of imprisonment. Id. at 10. Judge Bowen also explained that upon entry of the guilty plea, he would receive a Presentence Investigation Report ("PSI"),

and Petitioner's sentence would be based on the information in the PSI.  Id. at 12-13.

Next, Judge Bowen heard a factual basis for the guilty plea from Assistant United States Attorney Patricia Rhodes.  Id. at 14-16.  On Monday July 16, 2018, investigators with the Richmond County Sheriff's Office received information Petitioner was selling marijuana at 724 Demaret Street.  Id. at 14.  When investigators arrived, Petitioner was sitting in a silver Chrysler 300 parked in the driveway.  Id.  Investigator Kyle Gould made contact with Petitioner, who appeared nervous.  Id.  Investigator Gould knew Petitioner was on parole and asked him to exit the vehicle.  Id.  Investigator Gould then observed a Springfield XDM 9-millimeter pistol on the driver's side floorboard of Petitioner's vehicle and located a small amount of marijuana in a glass jar inside a blue bag on the back seat.  Id. at 14-16.  After Petitioner's arrest, the investigators received consent from Petitioner's mother to search two safes located inside her home, where they found two additional firearms and marijuana.  Id. at 15.  However, Petitioner was not charged with possession of the two firearms because consent to search was obtained from Petitioner's mother, rather than Petitioner.  Id.

Petitioner confirmed to Judge Bowen the information provided by Ms. Rhodes and contained in the indictment was true and he was guilty of, and wanted to plead guilty to, the felon in possession charge.  Id. at 17, 20-21.  Judge Bowen then summarized the proceedings as follows:  Petitioner "has acknowledged his guilt. He is aware of his right to trial. He knows the maximum penalty and with full knowledge of the consequences, he has decided to plead guilty upon a sound factual basis, and I'll accept the plea in writing."  Id. at 21.

### D.    Sentencing

The United States Probation Office prepared a PSI which set Petitioner's Total Offense Level at twenty-five, Criminal History Category at V, and Guidelines imprisonment

range at 100 to 120 months.  PSI ¶¶ 26, 37, 62.  The base offense level of twenty-two was increased by two and four points, respectively, because the offense involved three firearms and Petitioner possessed the firearm while in possession of marijuana with intent to distribute.  PSI ¶¶ 17-18.  The adjusted offense level was reduced three points for Petitioner's acceptance of responsibility.  PSI ¶¶ 24-25.

Petitioner raised three objections to the PSI based on the firearms enhancement under § 2K2.1(b)(1)(A), felony enhancement under § 2K2.1(b)(6)(B), and calculation of his criminal history score in ¶ 35.  See PSI Add.; CR 119-003, doc. no. 39, ("Sent. Tr."), pp. 3-4, 8-9.  Mr. Pacheco argued at sentencing that (1) the two-level enhancement for possessing three firearms should not apply because Defendant was charged with and pled guilty to only one firearm offense; and (2) the four-level enhancement for possessing a firearm while committing a felony should not apply because Petitioner possessed a misdemeanor rather than felony amount of marijuana.  Sent. Tr., p. 3.  The government agreed the two-level enhancement should not apply and explained it did not anticipate the four-level enhancement would apply given the small amount of marijuana.  Id. at 4-6.  Particularly, the government reasoned the amount of marijuana found in Petitioner's home and vehicle totaled sixteen grams, and therefore, the government tried "to structure the case in such a way where [the four-level] enhancement wouldn't necessarily apply to [Petitioner]."  Id. at 8.

Judge Bowen sustained Petitioner's objection as to the two-level enhancement but overruled the objection as to the four-level enhancement for possession of a firearm in connection with another felony.  Id. at 10-12.  In overruling the objection, Judge Bowen explained the marijuana was separately packaged and found in the same vehicle as the firearm Petitioner was charged with possessing, and Petitioner had multiple drug-related

convictions.  Id. at 11-12.

Having ruled on the objections, Judge Bowen adopted the factual statements in the PSI, as well as the conclusions contained therein, and determined the advisory Guidelines range was 84 to 105 months imprisonment.  Id. at 12.  Judge Bowen imposed a term of imprisonment of 96 months to be served consecutive to Petitioner's sentence in CR 107-128. Id. at 23; CR 119-003, doc. no. 27.

**E.    Direct Appeal**

On appeal, Mr. Pacheco filed an Anders brief, acknowledging Petitioner's "desire to challenge the district court's 4-point [enhancement] for possession of a firearm in connection with [Petitioner's] felony offense of possession of marijuana with intent to distribute." United States v. Davenport, No. 19-12971, 2019 WL 6271122, at *15-*20 (11th Cir. Nov. 21, 2019).   The Eleventh Circuit affirmed Petitioner's sentence, explaining "[o]ur independent review of the entire record reveals that counsel's assessment of the relative merit of the appeal is correct" and "independent examination of the entire record reveal[ed] no arguable issues of merit . . . ."  United States v. Davenport, 798 F. App'x 601, 602 (11th Cir. 2020) (*per curiam*).

**F.    § 2255 Proceedings**

On January 11, 2021, Petitioner timely filed the amended § 2255 motion to vacate, set aside, or correct his sentence.  While much of Petitioner's claims are vague and conclusory, the Court discerns the following:

(1) Counsel provided ineffective assistance in the pretrial phase of the case when he failed to object to the search of Petitioner, failed to "provide support for uncorroborated statements," and failed to object to the firearm charge on the grounds of no interstate nexus and no active employment of the firearm;

(2) Counsel provided ineffective assistance in the sentencing phase of the case when he failed to object to the four-level enhancement under § 2K2.1(b)(6)(B) for possessing a firearm in connection with a felony offense; and

(3) Counsel provided ineffective assistance when failed to ensure the Government did not breach the plea agreement.

(See generally doc. no. 3.)

## II.   DISCUSSION

### A.   No Evidentiary Hearing Required

Petitioner asks for an evidentiary hearing.  (Doc. no. 3, p. 5.)  Section 2255 does not require an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. . . ."  Winthrop-Redin v. United States, 767 F.3d 1210, 1216 (11th Cir. 2014) (quoting 28 U.S.C. § 2255(b)).  "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations.   Nor is a hearing required where the petitioner's allegations are affirmatively contradicted in the record."  Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (citation omitted).  Moreover, a petitioner is not entitled to an evidentiary hearing where he asserts "merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible."  Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (citation omitted); see also Lynn v. United States, 365 F.3d 1225, 1238-39 (11th Cir. 2004).

While ineffective assistance of counsel claims often require a hearing for development of an adequate record, an evidentiary hearing is not required every time such a claim is raised.  Rosin v. United States, 786 F.3d 873, 878-79 (11th Cir. 2015); Vick v.

United States, 730 F.2d 707, 708 (11th Cir. 1984).  Because Petitioner's claims lack merit as a matter of law no evidentiary hearing is necessary, and Petitioner's request for one should be denied.

**B.   Petitioner's Heavy Burden Under Strickland v. Washington To Establish Ineffective Assistance of Counsel**

Ineffective assistance of counsel claims are subject to the two-part test enunciated in Strickland v. Washington, 466 U.S. 668 (1984).  See Massaro v. United States, 538 U.S. 500, 505 (2003); United States v. Armstrong, 546 F. App'x 936, 940 (11th Cir. 2013).  Under the first prong, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688.  In this regard, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions."   Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001).  The purpose of this review is not to grade counsel's performance because, of course, every lawyer "could have done something more or different . . . .  But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (*en banc*).

Because no absolute rules dictate reasonableness, counsel has no duty to investigate particular facts or defenses.  Id. at 1317.  Counsel is not required to "pursue every path until it bears fruit or until all available hope withers."  Puiatti v. Sec'y, Fla. Dep't of Corr., 732 F.3d 1255, 1280 (11th Cir. 2013) (quoting Foster v. Dugger, 823 F.2d 402, 405 (11th Cir. 1987)).  Strategic decisions are entitled to a "heavy measure of deference."  Strickland, 466 U.S. at 691.

"Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted . . . ." Ward v. Bowen, 592 F.3d 1144, 1164 (11th Cir. 2010) (citing Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995)). The Court must resist "using the distorting effects of hindsight and must evaluate the reasonableness of counsel's performance from counsel's perspective at the time." Chandler, 218 F.3d at 1316; see also Waters, 46 F.3d at 1514 ("The widespread use of the tactic of attacking trial counsel by showing what might have been proves that nothing is clearer than hindsight – except perhaps the rule that we will not judge trial counsel's performance through hindsight.")

A court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697; see Brooks v. Comm'r, Ala. Dep't of Corr., 719 F.3d 1292, 1301 (11th Cir. 2013). Under the prejudice prong of Strickland, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

A petitioner must affirmatively prove prejudice that would undermine the results of the proceedings because "attorney errors come in an infinite variety and are as likely to be

utterly harmless in a particular case as they are to be prejudicial.  That the errors had some conceivable effect on the outcome of the proceeding is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations and internal quotations omitted).  Indeed, the Court must examine the entirety of counsel's performance and the effect of such "in light of the record as a whole to determine whether it was reasonably probable that the outcome would have been different."  Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989).

Moreover, in the context of a guilty plea, in addition to showing counsel's representation fell below an objective standard of reasonableness, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Hill v. Lockhart, 474 U.S. 52, 59 (1985); Lee v. United States, ⸺ U.S. ⸺, 137 S. Ct. 1958, 1965, 198 L.Ed.2d 476 (June 23, 2017); Stephens v. Sec'y, Fla. Dep't of Corr., 678 F.3d 1219, 1225 (11th Cir. 2012).  In assessing whether a petitioner has met this standard, the Supreme Court has emphasized the "fundamental interest in the finality of guilty pleas."  Hill, 474 U.S. at 58.  Where the attorney error allegedly affects the prospects of success at trial, a defendant who pled guilty must also show "he would have been better off going to trial."  Lee, 137 S. Ct. at 1965.

The impact of a guilty plea on the deficiency analysis is substantial both with respect to the scope and nature of the inquiry.  As to scope, the Supreme Court explained as follows:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.  He may only attack the voluntary and intelligent character of the guilty plea by

11

showing that the advice he received from counsel was not within the standards set forth in McMann [v. Richardson, 397 U.S. 759 (1970)].

. . . [I]t is not sufficient for the criminal defendant seeking to set aside such a [guilty] plea to show that his counsel in retrospect may not have correctly apprised the constitutional significance of certain historical facts. . . .

. . . Often the interests of the accused are not advanced by challenges that would only delay the inevitable date of prosecution, or by contesting all guilt. A prospect of plea bargaining, the expectation or hope of a lesser sentence, or the convincing nature of the evidence against the accused might well suggest the advisability of a guilty plea without elaborate consideration of whether pleas in abatement . . . might be factually supported.

Tollett v. Henderson, 411 U.S. 258, 267-68 (1973).

As to the nature of the inquiry, "counsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial . . . ." Stano v. Dugger, 921 F.2d 1125, 1151 (11th Cir. 1991) (en banc) (quoting Wofford v Wainwright, 748 F.2d 1505, 1508 (11th Cir. 1984)). When a client pleads guilty, defense counsel "need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial." Id.; see also Carter v. United States, 288 F. App'x 648, 649 (11th Cir. 2008) (per curiam). Counsel can impart such an understanding by offering his informed opinion on the best choice after examining the facts, circumstances, pleadings, and laws at issue. Wofford, 748 F.2d at 1508.

Because no absolute rules dictate reasonableness, counsel has no duty to investigate particular facts or defenses. Chandler, 218 F.3d at 1317. Counsel is not required to "pursue every path until it bears fruit or until all available hope withers." Puiatti v. Sec'y, Fla. Dep't of Corr., 732 F.3d 1255, 1280 (11th Cir. 2013) (quoting Foster v. Dugger, 823 F.2d 402, 405 (11th Cir. 1987)). As has been long-settled, "that a guilty plea must be intelligently made is

not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing." McMann, 397 U.S. at 770.

### C.    Ground One is Barred by Petitioner's Guilty Plea

#### 1.    Petitioner's Guilty Plea Was Knowing, Voluntary, and Binding

Once a guilty plea becomes final, unless the record demonstrates that the sentencing court lacked the power to enter the conviction or impose the sentence, a petitioner may only challenge the knowing, voluntary nature of the plea. United States v. Broce, 488 U.S. 563, 569 (1989). In conducting its analysis, the Court starts with the proposition that a trial court may not accept a guilty plea without an affirmative showing on the record that the plea was intelligent and voluntary. Boykin v. Alabama, 395 U.S. 238, 242-43 (1969). The Eleventh Circuit has described the requirements for a valid guilty plea as follows: "The Fourteenth Amendment Due Process Clause requires that a plea of guilty be knowingly and voluntarily entered because it involves a waiver of a number of the defendant's constitutional rights. A plea of guilty cannot support a judgment of guilt unless it was voluntary in a constitutional sense." United States v. Brown, 117 F.3d 471, 476 (11th Cir. 1997). A guilty plea may be involuntary in a constitutional sense if a defendant is coerced into his plea, if a defendant does not understand the nature of the constitutional protections he is waiving, or "if a defendant has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt." Id. Thus, a defendant must receive "real notice of the true nature of the charged crime." Id.

The Eleventh Circuit has further explained that, for a guilty plea to be knowingly and voluntarily made, the court accepting the guilty plea must "specifically address three 'core principles,' ensuring that a defendant (1) enters his guilty plea free from coercion,

13

(2) understands the nature of the charges, and (3) understands the consequences of his plea."
United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005) (*per curiam*) (citations
omitted).  In addition, "a defendant who seeks reversal of his conviction after a guilty plea . .
. must show a reasonable probability that, but for the error [under Rule 11 of the court
accepting the guilty plea], he would not have entered the plea."  Id. at 1020 (quoting United
States v. Dominguez Benitez, 542 U.S. 74, 83 (2004)).

Judge Bowen reviewed the charge raised against Petitioner in the indictment,
specifically informed Petitioner in clear terms of the charge to which he was pleading guilty,
and reviewed the elements of the offense the government would have to prove to obtain a
conviction.  Rule 11 Tr. 9, 12-13.  Petitioner testified he understood this information.  Id. at
13.  Judge Bowen also provided a detailed explanation of the rights Petitioner would forfeit
by pleading guilty, and Petitioner affirmed he understood his decision to plead guilty would
result in a waiver of these rights.  Id. at 10-11.  Petitioner testified that other than the
promises the government made in the Plea Agreement, no one made promises to get him to
plead guilty, and Judge Bowen confirmed Petitioner's decision to plead guilty was not the
result of force, pressure, threats or promises other than those in the plea agreement.  Id. at 13,
20.

Additionally, Judge Bowen informed Petitioner of the maximum penalty for his
charge.  Id. at 9-10.  Finally, Petitioner also testified he had enough time to discuss the case
with Mr. Pacheco and was satisfied with his services.  Id. at 9; see also Plea Agreement, p.
12 ("I have read and carefully reviewed this agreement with my attorney.").  Thus, Judge
Bowen's thorough plea colloquy ensured Petitioner understood both the nature of the charge
and the consequences of his guilty plea, and Petitioner was not coerced into pleading guilty.

See Moriarty, 429 F.3d at 1019.  Petitioner's guilty plea was thus knowing and voluntary and, as explained below, nothing alleged in Grounds One and Two are sufficient to overcome Petitioner's guilty plea.  See Dominguez Benitez, 542 U.S. at 83.

### 2.    The Guilty Plea Bars Ground One

In Ground One, Petitioner does not specify whether he is challenging the search of his vehicle or the subsequent search of his mother's residence, and regardless of the focus, Ground One is devoid of merit.  Most difficult for Petitioner to overcome is that entry of a valid guilty plea waives all non-jurisdictional defects occurring prior to entry of the plea, including suppression arguments concerning searches and seizures.  See United States v. Patti, 337 F.3d 1317, 1320 (11th Cir. 2003) ("Generally, a voluntary, unconditional guilty plea waives all nonjurisdictional defects in the proceedings."); see also Broderick v. United States, No. 20-11612-F, 2020 WL 6280808, at *2 (11th Cir. Aug. 13, 2020) (holding "[petitioner's] knowing and voluntary guilty plea waived the search-and-seizure arguments" raised in 2255 habeas petition); United States v. Aguilar, 196 F. App'x 837, 838 (11th Cir. 2006) (per curiam) (stating voluntary unconditional guilty plea waived legality of search arguments); Hernandez-Rodriguez v. United States, No. 1:17-CR-0157-CAP, 2020 WL 1673009, at *2 (N.D. Ga. Apr. 6, 2020) ("Claims that trial counsel gave ineffective assistance regarding search and seizure issues under the Fourth Amendment are among those challenges waived by a knowing and voluntary guilty plea.").

Even if Petitioner's claims were not barred by his valid guilty plea, Petitioner's conclusory claims in Ground One form no basis for relief.  Petitioner offers nothing to explain what search he wishes to challenge, the bases for objecting, and how the unspecified errors by Mr. Pacheco would have affected the outcome of his case.  Petitioner's claims in

Ground One are devoid of meaningful factual or legal support, and thus offer no basis for relief. Hill v. Lockhart, 474 U.S. 52 (1985) (conclusory allegations of ineffective assistance of counsel are insufficient to raise a constitutional issue); Pio v. United States, No. 13-23666-CIV, 2014 WL 4384314, at *3 (S.D. Fla. Sept. 3, 2014) ("The movant in a § 2255 proceeding alleging ineffective assistance of counsel must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact which, if proved at a hearing, would entitle him to relief."); Williams v. United States, 457 F. Supp. 3d 1240, 1250 (M.D. Fla. 2020) ("A petitioner is not entitled to . . . habeas relief when his claims are merely conclusory allegations unsupported by specifics . . . ."); Trejo v. United States, No. 2:16CV647-MHT, 2019 WL 4597256, at *4 (M.D. Ala. Aug. 15, 2019), adopted by, Trejo v. United States, No. 2:16CV647-MHT, 2019 WL 4580386 (M.D. Ala. Sept. 20, 2019) (denying relief where petitioner provided "no specifics whatsoever as to how [counsel] performed deficiently, or how he was prejudiced as a result of their allegedly deficient performance."). Accordingly, Petitioner is not entitled to relief on this claim.

**D.     Ground Two Fails Because Mr. Pacheco's Representation at Sentencing Was Neither Constitutionally Deficient nor Prejudicial**

In Ground Two, Petitioner claims Mr. Pacheco provided ineffective assistance when he failed to object to the four-level enhancement under § 2K2.1(b)(6)(B) for possessing a firearm in connection with another felony offense. However, Mr. Pacheco did, in fact, object to the four-level enhancement both in the PSR and at sentencing. See PSI Add.; Sent. Tr., pp. 3-4, 8-9. On appeal, the Eleventh Circuit affirmed Petitioner's sentence and found Petitioner's arguments concerning the four-level enhancement to be non-meritorious. United

States v. Davenport, 798 F. App'x 601, 602 (11th Cir. 2020) (*per curiam*).  Thus, Petitioner is not entitled to relief on this claim.

### E.     Petitioner Is Not Entitled to Relief on Ground Three

Ground Three alleges Mr. Pacheco provided ineffective assistance by "failing to ensure the government upheld their end of the plea agreement." (Doc. no. 3, p. 4.)  Petitioner provides no factual support, and the Court presumes Petitioner is referring to the four-level enhancement.   No such breach exists.   The Plea Agreement explained the Sentencing Guidelines are advisory and "are based on all of Defendant's relevant conduct, pursuant to U.S.S.G. § 1B1.3, not just the facts underlying the particular Count to which Defendant is pleading guilty."  Plea Agreement, p. 3.  With his signature on the Plea Agreement and under oath to Judge Bowen at the Rule 11 proceedings, Petitioner confirmed he knew he faced a maximum statutory penalty of ten years, no one had promised him a specific sentence, and Judge Bowen would sentence Petitioner based on all the information provided in the PSI. Rule 11 Tr. 9-10, 13, 20; Plea Agreement, pp. 2-3.

The Plea Agreement also stated, "[n]othing in this agreement precludes the government from providing full and accurate information to the Court and U.S. Probation Office for use in calculating the applicable Sentencing Guidelines range."  Plea Agreement, p. 3.   Finally, the Plea Agreement was silent concerning application of the four-level enhancement, and although the government conceded it did not intend for the enhancement to apply, Judge Bowen was free to consider all relevant conduct when sentencing.   Thus, there was no basis for Mr. Pacheco to argue a breach of the plea agreement, and he was not ineffective for failing to raise a meritless argument.  See Winfield, 960 F.2d at 974.

## III.     CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the amended § 2255 motion challenging Petitioner's conviction in CR 119-003 be **DENIED** without an evidentiary hearing, (doc. no. 3), the original motion be **DENIED AS MOOT**, (doc. no. 1), the § 2255 motions in CR 107-128 be **DENIED AS MOOT**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 28th day of May, 2021, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA